WALLACE OSTERHOUT v. JERSEY CITY. HOBOKEN AND PATERSON STREET RAILWAY COMPANY.

Submitted December 9, 1904—Decided November 13, 1905.

A conductor was thrown from the platform of a trolley car and injured. It appeared that he knew that the track was rough and uneven, but it did not conclusively appear that he knew or should have known of other defects in the track which probably caused the derailment. In an action against his employer the court rightly refused to nonsuit or direct verdict for the defendant, asked for on the ground that plaintiff assumed the risk of derailment of the car.

---

In tort. On error to the Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, GARRETSON and REED.

For the plaintiff in error, *Bedle, Edwards & Thompson* and *William H. Speer.*

For the defendant in error, *Weller & Lichtenstein.*

The opinion of the court was delivered by

REED, J. The plaintiff below was a conductor on a car of the defendant, the rear trucks of which were derailed.

The swerving of the rear of the car threw the conductor from the rear platform and injured him. On the trial below there was a verdict for the plaintiff.

The schedule time from North Paterson to Passaic, a distance of four and one-half miles, was one hour. The rails of the defendant's road between these termini were not uniform. The ends of the road were laid with heavy, solid rails, while for a space of about a mile between there were laid lighter rails of a different pattern, apparently older and much worn, with uneven joints. There is testimony that a piece of the flange at or near the point where the car was derailed was broken from the rail and that this flange looked as if it had been broken for some time.

The only question which requires consideration on this writ of error is whether the conductor assumed the risk of this accident.

The risk of injury from a defect in the track, negligently permitted to remain unrepaired, was not one of the ordinary risks which the conductor assumed in entering upon his employment. He cannot be said to have assumed the risk in the absence of notification of the danger, unless the danger was so apparent that by a person in his position, using reasonable prudence, it would have been observed. The conductor had been on the run over this road for two or three weeks at the time of the accident. He says that he discovered, after a few days, that these rails were old by the way the car ran over them; when the car came to the joints it bumped and jumped, and that the car also wabbled. He says that the car ran smoothly over this portion of the track when they had plenty of time.

From the testimony of a previously employed motorman it appeared that the car jerked when it came to the end of the rail; that the end of one rail would be higher than the end of the next rail; that the flange of the car wheel ran on the flange of the rail, in many places the rail itself being worn down; that with his eyes in front he would see the mud slop up on one side—when the car struck the rail it threw the water and sand to one side. He says that in some

places there was hardly any dirt between the tracks; that he could see the iron brace running from one rail to another where the dirt had been washed out. It also appeared that after the car left Passaic and was within a mile and a quarter of the bad rails the conductor told the motorman they were five minutes behind time.

From what the conductor admits he knew, it cannot be said that he took upon himself the risk of derailment of his car. The fact that the track was rough and uneven, and by reason thereof the joints may have been uneven, did not prove that the risk of derailment was apparent. Nor from what he should have known does it seem clear that he assumed the risk of the happening of such an occurrence. From the fact, if true, that a previous motorman had observed conditions which warned him of the danger, it does not follow that this conductor should have observed the same conditions. A motorman's attention is directed to the line of the track over which he is passing, but a conductor has other duties which demand his attention elsewhere. It is not so clear that the conductor appreciated the risk, and so assumed it, that the court should have granted a nonsuit or directed a verdict. Nor can the warning given by the conductor to the motorman that they were five minutes late be regarded as a direction to run over this portion of the track at a reckless speed. It was the ordinary indication given by a conductor to a motorman to enable him to run his car on schedule time. Nor does the testimony show with any degree of certainty that the car was running at a dangerous speed at the time of the occurrence.

There should be judgment for the defendant in error.